FILED
2013 Jan-30  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **THEDA H. GOODRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  4:11-CV-240-VEH** |
| | ) | |
| **SIEMENS ENERGY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff Theda Goodridge ("Ms. Goodridge"), who is proceeding *pro se*, initiated this action against her former employer, Defendant Siemens Energy Inc. ("SEI") on January 26, 2011.  (Application, Doc. #1).  The court ordered Ms. Goodridge to file an Amended Complaint.  (Order, Doc. #2).  The Amended Complaint (Doc. # 3), as amended by the Second Amended Complaint (Doc. #10) alleges, against SEI, claims of: (1) employment discrimination (pay, failure to promote, and termination) based on her gender, in violation of 42 USC §§ 2000 et seq. ("Title VII") (Count One); (2) employment discrimination (pay, failure to promote, and termination) based on her age, in violation of 29 USC §§ 621 et seq. ("ADEA") (Count Two); and (3) violations of the Equal Pay Act, 29 U.S.C. §206(d)

(Count Three).

On October 1, 2011, SEI filed its Motion for Summary Judgment, with accompanying brief and evidentiary material ( the "Motion," Docs. # 20, 21). Ms. Goodridge twice requested (Docs. # 22, 23) and received (Margin Orders dated 10/24/2012 and 11/26/2012) extensions of time to respond to the Motion. The deadline for Ms. Goodridge to respond expired on December 13, 2012. Ms. Goodridge has failed to oppose the Motion. Accordingly, SEI's Motion for Summary Judgment is now under submission for a decision. Upon consideration of the record and the relevant law, the court concludes that SEI's Motion for Summary Judgment is due to be granted.

## II.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.' "*Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (citation to former rule omitted); FED.R.CIV.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-now dispute-] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant (here, SEI) may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party (here, Ms. Goodridge) has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id*. at 322–324.

In this case, as demonstrated below, SEI has met its evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Ms. Goodridge to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(3) ("If

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." FED.R.CIV.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. " 'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive SEI's properly supported motion for summary judgment, Ms. Goodridge is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims of age and gender discrimination. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Rule 56(e), Federal Rules of Civil Procedure . Thus, when a plaintiff such as Ms. Goodridge fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987) (If on any part of the prima facie case the plaintiff presents

insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990) ("Although we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, we hold that a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."). Thus, Ms. Goodridge's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Ms. Goodridge fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY*

*Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must either prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination or present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

More specifically, regarding a nonmovant's failure to oppose summary

judgment, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam)). While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

At the very least, this court must consider all the evidence submitted by the movant in support of its motion. *Id.* (citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) (". . . the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.")). The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet his burden, this court may deny the motion, without regard to whether the nonmovant has filed a response. *Hibernia Nat'l Bank*, 776 F.3d at 1279 (citing *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985)). However, if the nonmovant has not supplied the court with a response to dispute any issue of fact, this court may receive the movant's factual account as "a *prima facie* showing of its entitlement to judgment." *Eversley v. MBank Dallas*, 843

F.2d 172, 174 (5th Cir. 1988) (citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Celotex*, 477 U.S. 317).

## III.   STATEMENT OF MATERIAL FACTS

1.  Ms. Goodridge was born in 1960, and was 45 years old as of May 15, 2006. [Pl. Dep. 22:21 – 23:1; 13:6-9; 144:11-15].

2.  SEI hired Ms. Goodridge on May 15, 2006, as a Procurement Specialist 1 in the indirect purchasing department. [Pl. Dep. 13:6-9; 144:11-15].

7.  Ms. Goodridge was hired to work at SEI's Fort Payne, Alabama, facility. [Davis Dec. ¶10.]

4.  Candidates for the Procurement Specialist 1 position were typically required to have a bachelor's degree, but D'Andrea hired Ms. Goodridge for this position despite the fact that she did not have a college degree. [Pl. Dep. 11:22-12:12; 32:7-11].

33.  Ms. Goodridge does not know whether other candidates for the position had a bachelor's degree, and she was unaware at the time she was hired of any other Procurement Specialist within SEI who did not have a college degree. [Pl. Dep. 31:6-9; 38:16 – 39:6].

5.  D'Andrea told Ms. Goodridge during her interview for the Procurement

Specialist 1 position that her pay would start low, but that he would "take care of [her]" and eventually get her pay up to everyone else's level. [Pl. Dep. 35:10-18].

7.  Pam Davis was the manager of the Human Resources function at SEI's Fort Payne facility at the time that Ms. Goodridge was hired and at all other times relevant to this action. [Davis Dec. ¶3.]

8.  Davis was involved in the process of hiring Ms. Goodridge for the Procurement Specialist 1 position. [Davis Dec. ¶10].

9.  Davis recommended to D'Andrea the amount of Ms. Goodridge's starting salary. [Davis Dec. ¶10.; D'Andrea Dec. ¶3].

8.  Davis based her salary recommendation on SEI's allowable range for the position and took into consideration Ms. Goodridge's lack of a college degree, her experience, her pay rate during her prior work with SEI, and the pay of other nontechnical employees in Fort Payne. [Davis Dec. ¶10].

9.  Davis did not consider age or gender in recommending Ms. Goodridge's salary. [Davis Dec. ¶11].

11.  D'Andrea accepted Davis' recommendation. [D'Andrea Dec. ¶3; Davis Dec. ¶10].

6.  Ms. Goodridge was hired at a salary of $35,000. [Pl. Dep. p. 49:13-22].

12.  Nothing about the process of Ms. Goodridge's being hired as a

Procurement Specialist was discriminatory on the basis of her age or gender. [Pl. Dep. 37:4-13].

3.  From May 15, 2006, until her termination in 2010, Ms. Goodridge reported directly to John D'Andrea, who was based in Orlando, Florida. [Pl. Dep. 302:1-4; D'Andrea Dec ¶¶ 2-3].

14.  Ms. Goodridge was placed on a 60 day Performance Improvement Plan ("PIP") dated May 21, 2008. [Pl. Dep. 161:16 – 162:4, and Exs. 7 and 8].

15.  Ms. Goodridge was issued the PIP in a meeting with Gwen Hill, a female Logistics Manager at the Plant to whom Ms. Goodridge had a dotted line reporting relationship, D'Andrea, and Davis. [Pl. Dep. 162:5-14].

16.  At no time during the meeting with D'Andrea, Hill, and Davis did anyone make reference to Ms. Goodridge's age or gender. [Pl. Dep. 162:20 – 163:4].

17.  Ms. Goodridge does not believe she was given the May 21, 2008 PIP because of her age or gender. [Pl. Dep. 163:5-12].

18.  While the May 21, 2008 PIP was in effect, D'Andrea, Hill, Davis, and Plant Manager Sam Suttle, met to discuss Ms. Goodridge's progress towards achieving the expectations set forth in the PIP. [D'Andrea Dec. ¶16; Davis Dec. ¶15].

19.  Although she had made progress in several areas of the PIP, local management in Fort Payne observed continued problems with communication and

follow-through on projects. [D'Andrea Dec. ¶16; Davis Dec. ¶15].

20.   Some of the continued issues were Ms. Goodridge's failure to take the required action for a supplier's invoices to be processed for payment, and she failed to respond to a request regarding why payments had not been made. [D'Andrea Dec. ¶16 and Ex. 3].

21.   The management group also knew that Ms. Goodridge had not yet renewed the contract with a calibration company, which she had been asked to do in June. [D'Andrea Dec. ¶16; Davis Dec. ¶15].

22.   Ms. Goodridge does not accuse Davis or Hill of taking any action against her because of her age or gender. [Pl. Dep. 108:17 – 109:3 (Davis); 103:14 –104:20 (Hill and Davis not listed); 106:8 – 107:2 (same)].

23.   Ms. Goodridge did not include Suttle on the list of those who treated her differently because of her age. [Pl. Dep. 106:8 – 107:2].

24.   Although Ms. Goodridge initially included Suttle on the list of those who treated her differently because of her gender, she later testified that Suttle took no direct action against her for this reason. [Pl. Dep. 103:14 – 104:20; 344:4-11].

25.   SEI issued another PIP to Ms. Goodridge on August 14, 2008. [D'Andrea Dec. at ¶16; Pl. Dep. Ex. 9].

26.   Ms. Goodridge never met with anyone to discuss the second PIP and did

11

not see the document until it was submitted to the Equal Employment Opportunity Commission after she filed a Charge of Discrimination. [Pl. Dep. 167:17-168:5].

27.   While Ms. Goodridge disagrees that her job performance was below expectations, she admits that she had some personal issues at that time and in fact once notified plant security to let her know if her husband or his girlfriend showed up at the plant. [Pl. Dep. 18:18 – 22:17; Davis Dec. ¶12 and Ex. G].

28. During the time Ms. Goodridge was being coached for poor performance, so too were male employees in Fort Payne. [Davis Dec. ¶s 17-18].

29.   Walter Watson, who was born in 1957, was placed on a PIP on December 2, 2008. [Davis Dec. ¶17].

30.   Watson corrected his performance and remained employed. [Davis Dec. ¶17].

31.   Kevin Patterson, who was born in 1966, was issued PIPs on January 9 and April 30, 2009. [Davis Dec. ¶18].

32.   Patterson corrected his performance and remained employed. [Davis Dec. ¶18].

62.   Ms. Goodridge's performance evaluations covered the dates of October 1 through September 30 of the following year. [D'Andrea Dec. ¶17].

63.   Because he was based in a different location than Ms. Goodridge,

D'Andrea sent an email request to Plant Manager Suttle on August 25, 2009, requesting "any relevant comments for Theda Goodridge's performance review." [D'Andrea Dec. ¶18 and Ex. 4].

64.   Suttle responded on August 27, 2009. [Id.].

65.   Based on the feedback received and his own personal knowledge of her work performance, D'Andrea issued Ms. Goodridge a "Not Achieved" rating. [D'Andrea Dec. ¶18; Pl. Dep. 197:4 – 200:8 and Ex. 10].

66.   Ms. Goodridge typed the remarks in ¶6 of the evaluation. [Pl. Dep. 197:23 – 198:14].

67.   Ms. Goodridge made no reference to any alleged discrimination in her comments to her 2009 evaluation. [Pl. Dep. Ex. 10, ¶6].

68.   McMichen Electric is an SEI maintenance vendor in Fort Payne. [Pl. Dep. 273:2-6].

69.   It was Ms. Goodridge's responsibility to review McMichen's invoices for accuracy. [Pl. Dep. 280:20 – 282:9].

70.   On December 8, 2009, John Ustica, the Controller at SEI's Fort Payne facility, sent an email to Ms. Goodridge indicating that he had concerns about the accuracy of the McMichen invoices. [Pl. Dep. 277:1 – 278:5 and Ex. 11].

71.   In his email, Ustica instructed Ms. Goodridge that, effective January 1,

2010, "[n]o payments are authorized to McMichen Electric without my signature on the paper.' [Pl. Dep. Ex. 11 (emphasis in original)].

72.  On January 25, 2010, Ustica notified Ms. Goodridge that, contrary to his instructions to her,  payments had been made to McMichen. [Pl. Dep. Ex. 11].

73.  Ms. Goodridge responded by email on January 26, 2010, and acknowledged that an invoice which should have been blocked was paid. [Id.].

74.  Ustica forwarded Ms. Goodridge's response to Davis. [Id.].

75.  Ms. Goodridge does not believe that Ustica's investigation of the McMichen invoices was discriminatory. [Pl. Dep. 283:1-4].

76. Ms. Goodridge does not believe there is anything about this email exchange with Ustica that was motivated by her age or gender. [Pl. Dep. 283:5-14].

77.  Ms. Goodridge knows that the McMichen issue was a factor in and contributed to her discharge. [Pl. Dep. 283:15-18].

78.  Following this issue, the Plant Manager recommended that Ms. Goodridge be discharged, and D'Andrea supported the decision, based on Ms. Goodridge's continued poor performance. [D'Andrea Dec. ¶19; Davis Dec. ¶20].

*.  D'Andrea made the decision to discharge Ms. Goodridge, with input from Suttle, Mike Newsome, and Davis. [D'Andrea Dec. ¶19; Davis Dec. ¶20].

79.  SEI discharged Ms. Goodridge on January 28, 2010 for continued poor job

performance. [Pl. Dep. 111:6 – 112:4 and Ex. 6; D'Andrea Dec. ¶19; Davis Dec. ¶20].

80.  Ms. Goodridge does not allege that Newsome took any action against her because of her age. [Pl. Dep. 45:19-11].

81.  D'Andrea and Davis met with Ms. Goodridge in Fort Payne and told Ms. Goodridge she was discharged. [Pl. Dep. 110:1 – 112:4 and Ex. 6].

82.  Neither D'Andrea nor Davis made any reference to Ms. Goodridge's age or her gender during that meeting. [Pl. Dep. 110:13-20].

83.  No one told Ms. Goodridge she was being discharged because of her age or her gender. [Pl. Dep. 110:21 – 111:5].

84.  At no time during this meeting did Ms. Goodridge complain to D'Andrea or Davis that she felt she was being treated differently because of her age or her sex. [Pl. Dep. 113:16 – 114:6].

85.  Due to a corporate reorganization where SEI's parent corporation was to assume responsibility for indirect procurement, SEI did not replace Ms. Goodridge. [D'Andrea Dec. ¶20; Davis Dec. ¶s 22-23].

86.  Jennifer Hamilton, born in 1966, was subsequently hired by Newsome with Siemens Corp. to perform Ms. Goodridge's former duties as an indirect Procurement Specialist at the Fort Payne plant. [Pl. Dep. 116:5-8; 119:1-2, Davis Dec. ¶23].

114.  Ms. Goodridge filed her EEOC charge on March 5, 2010. [Pl. Dep. Ex.

14].

## IV.   ANALYSIS

### A.   Procedurally, Ms. Goodridge has failed to respond to SEI's Motion for Summary Judgment.

Applying the above standards to this case, the court concludes that SEI has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Ms. Goodridge has not come forward with any evidence in response to SEI's initial showing on summary judgment.  Pursuant to the court's second order granting Ms. Goodridge an extension, the deadline for Ms. Goodridge to file her written opposition to summary judgment was December 13, 2011.  (Margin Order dated November 26, 2011).  Therefore, from a procedural standpoint, Ms. Goodridge has failed to meet her burden on opposition to "show[] that the [evidentiary] materials cited [by SEI] do not establish the absence or presence of a genuine dispute [for trial]."  FED. R. CIV. P. 56(c)(1)(B).

### B.   Substantively, SEI's Motion for Summary Judgment is well-founded and due to be granted.

Additionally, the evidentiary record demonstrates that summary judgment in favor of SEI is appropriate because SEI has carried its burden of demonstrating the absence of any material factual dispute and an entitlement to judgment as a matter of law.  More specifically and as set out below, SEI has affirmatively shown that: (1)

16

because Ms. Goodridge did not file an EEOC Charge against SEI until March 5, 2010, all of Ms. Goodridge's Title VII and ADEA claims which accrued before September 7, 2009 are barred for failure to file an EEOC Charge within 180 days, as required by 42 U.S.C. §2000e-5(e) and 29 U.S.C. §626(d)(1)(A); (2) all of Ms. Goodridge's EPA claims predating January 26, 2009, are time barred pursuant to 29 U.S.C. §255; (3) Ms. Goodridge has failed to establish a *prima facie* case of pay discrimination under Title VII, the Equal Pay Act, or the ADEA, because she has not identified a single similarly situated comparator who was paid more; (4) even assuming that there is a genuine issue of material fact concerning Ms. Goodridge's *prima facie* pay claim, the undisputed record evidence establishes that any such differences were for legitimate business reasons unrelated to gender or age; (5) Ms. Goodridge has failed to establish a *prima facie* case of promotion discrimination under Title VII or the ADEA, because she admits she did not apply for any open positions for which SEI was seeking applicants; (6) Ms. Goodridge has failed to establish a *prima facie* case of discharge discrimination under Title VII or the ADEA because she has not identified a single similarly situated comparator who committed the same or similar infraction and was treated more favorably, and the undisputed evidence is that SEI did not replace her; and (8) the undisputed evidence establishes that SEI had legitimate business reasons for discharging Ms. Goodridge, and she has

17

not presented any evidence that SEI's reasons were a pretext for unlawful discrimination.

### 1. Pre-September 7, 2009, Title VII and ADEA Claims Are Time-Barred

Title VII and the ADEA require an individual to file an EEOC charge within 180 days of the allegedly discriminatory act. See 42 U.S.C. §2000e-5(e) and 29 U.S.C. §626(d)(1)(A); *Johnson v. Austal, U.S.A., L.L.C.*, 805 F. Supp. 2d 1299, 1306 (S.D. Ala. 2011)( "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act.")(citation omitted). Ms. Goodridge did not file an EEOC charge against SEI until March 5, 2010. Therefore, all of Ms. Goodridge's Title VII and ADEA claims which accrued before September 7, 2009, are time barred.

### 2. Pre-January 26, 2009, Equal Pay Act Claims Are Time-Barred

The EPA requires suit to be filed within two years. *See* 29 U.S.C. §255. Ms. Goodridge filed her Application Under Section 706(f) of Civil Rights Act of 1964 on January 26, 2011. Therefore, all of her EPA claims predating January 26, 2009, are time barred.

### 3. Ms. Goodridge's Non-Time Barred Claims Fail

"To establish a *prima facie* case under the Equal Pay Act, a party must show

that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Lawson-James v. City of Atlanta*, 485 Fed.Appx. 374, 376-77 (11th Cir. 2012) (citing *Steger v. Gen. Electric Co.*, 318 F.3d 1066, 1077–78 (11th Cir.2003) (quotations omitted)). "Once the plaintiff presents a *prima facie* case, the employer may avoid liability by proving by a preponderance of the evidence that the pay differences are based on ... any other factor other than sex." *Id*. (citing *Steger* at 1078)(quotations omitted)). "If the employer meets this burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." (*Id*. (citing *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir.1995) (quotations omitted).

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [their] compensation ... because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). The ADEA "prohibit[s] arbitrary age discrimination in employment." 29 U.S.C. §621.  As explained by the Supreme Court, the ADEA prohibits adverse employment actions "because of" age. *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2009). The Eleventh Circuit has established a multi-step burden-shifting method for analyzing Title VII gender discrimination claims. Accordingly,"a female Title VII

plaintiff establishes a prima facie case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Hall v. Siemens VDO Automotive*, 481 Fed.Appx. 499, 503 (1tth Cir. 2012) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994). Once a plaintiff establishes a *prima facie* case of gender discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the pay disparity. *Meeks,* 15 F.3d at 1019. This burden is not a heavy one; and, once the defendant has articulated a non-gender based reason, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent in perpetuating the pay disparity. *Meeks,* 15 F.3d at 1019.

Initially, there is no evidence that a pay differential existed. Indeed, SEI has pointed out, with supporting evidence, that Ms. Goodridge has failed to identify any comparators, either by gender or by age.  Thus, she has failed to establish a prima facie case of discrimination under Title VII, the ADEA, or the EPA.

Further, even assuming Ms. Goodridge has established a prima facie case, SEI has established, through uncontroverted evidence, that it had a reason other than gender or age for each of the complained-of actions, and Ms. Goodridge has failed to come forward with any evidence of pretext.

Thus, the uncontroverted evidence in the record is that Ms. Goodridge's starting pay did not take into consideration either her age or her gender.  Rather, her

starting pay was based on SEI's allowable range for the position and took into consideration Ms. Goodridge's lack of a college degree, her experience, her pay rate during her prior work with SEI, and the pay of other nontechnical employees in Fort Payne.

Further, the uncontroverted evidence is that Ms. Goodridge did not apply for any open promotions; thus, her claims of age or gender discrimination as to promotions also fail.

Finally, the uncontroverted evidence is that males and persons not within a protected age bracket also received PIPs but corrected their deficiencies, whereas Ms. Goodridge did not, such that her claims of age or gender discrimination as to termination also fail.

## V.   CONCLUSION

Fed. R. Civ. P. 56(c) mandates the entry of summary judgment when there is no genuine dispute about those facts which could affect the outcome of the case, and the moving party shows that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. 242. Where, as here, the party against whom summary judgment is sought (Ms. Goodridge) will bear the burden of proof at trial on dispositive issues, that party (Ms. Goodridge) must come forward with "specific facts showing that there is a genuine issue for trial." *See* FED. R. CIV. P. 56 e); *Celotex*, 477 U.S. 317.  If the party

against whom judgment is sought fails to come forward with substantive, competent evidence disputing material facts set forth in the motion, summary judgment should be granted in favor of the moving party. *Matsushita*, 475 U.S. 574. A party seeking to avoid summary judgment must produce concrete and competent affirmative evidence upon which a jury could base a verdict in that party's favor. *Anderson*, 477 U.S. at 256-57. SEI has pointed out the lack of evidence necessary to support essential elements of Ms. Goodridge's non-time barred prima facie claims under the EPA, Title VII, and the ADEA. Further, SEI has put before the court non-discriminatory reasons for its treatment of Ms. Goodridge as to all of her claims, and Ms. Goodridge has failed to show that those reasons are pretextual. Because Ms. Goodridge has not responded to the pending motions, she has not produced any concrete evidence establishing the existence of a genuine issue of material fact regarding any of her claims. Therefore, SEI is entitled to summary judgment as a matter of law on all her claims.

A separate judgment order will be entered.

**DONE** and **ORDERED** this the 30th day of January, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

22